UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------

|  |  |
|---|---|
| SHANNON JENKINS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| HOLLYFRONTIER CORPORATION, | : |
| FRANKLIN MYERS, MICHAEL C. | : |
| JENNINGS, ANNE-MARIE N. AINSWORTH, | : |
| ANNA C. CATALANO, CARNEY HAWKS, | : |
| LELDON E. ECHOLS, MANUEL J. | : |
| FERNANDEZ, R. CRAIG KNOCKE, | : |
| ROBERT J. KOSTELNIK, JAMES H. LEE, | : |
| and MICHAEL E. ROSE, | : |
| | : |
| Defendants. | : |

Case No. _____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

------------------------------------------------------------------------

Plaintiff Shannon Jenkins ("Plaintiff"), by and through her undersigned counsel, for her

complaint against defendants, alleges upon personal knowledge with respect to herself, and upon

information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations

herein, as follows:

**NATURE OF THE ACTION**

1.      Plaintiff brings this action against HollyFrontier Corporation ("HollyFrontier" or

the "Company") and the members of its Board of Directors (the "Board" or the "Individual

Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of

1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange

Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed

transaction, pursuant to which the Company will acquire refining, marketing and other businesses

of Sinclair Oil Corporation ("Sinclair Oil") from The Sinclair Companies ("Sinclair Holdco")

through HollyFrontier's subsidiaries Hippo Parent Corporation ("New Parent") and Hippo Merger

Sub, Inc. ("Parent Merger Sub") and Sinclair's subsidiary Hippo Holding LLC ("Sinclair NewCo") (the "Proposed Transaction").

2.      On August 3, 2021, HollyFrontier issued a press release announcing that it had entered into a Business Combination Agreement, dated August 2, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, HollyFrontier will acquire certain refining, marketing and other businesses of Sinclair Oil, a wholly owned subsidiary of Sinclair Holdco, which businesses were reorganized into Sinclair NewCo after the signing of the Merger Agreement.  In return, Sinclair Holdco will be issued stock in New Parent, which will own all of HollyFrontier's businesses and the acquired Sinclair NewCo businesses.  Pursuant to the Merger Agreement, HollyFrontier will acquire Sinclair NewCo by effecting (a) a holding company merger whereby Parent Merger Sub will merge with and into HollyFrontier, with HollyFrontier surviving such merger as a direct wholly owned subsidiary of New Parent (the "HFC Merger"), and (b) immediately following the HFC Merger, a contribution whereby Sinclair Holdco will contribute all of the limited liability company interests of Sinclair NewCo to New Parent in exchange for shares of New Parent, resulting in Sinclair NewCo becoming a direct wholly owned subsidiary of New Parent (the "Sinclair Acquisition" and together with the HFC Merger, the "HFC Transactions").  Subject to the terms and conditions set forth in the Merger Agreement, at the effective time of the HFC Merger (the "Effective Time"), each share of common stock of HollyFrontier issued and outstanding immediately prior to the Effective Time will be automatically converted into one validly issued, fully paid and nonassessable share of common stock of New Parent ("New Parent Common Stock").  Following the consummation of the HFC Transactions, New Parent will assume HollyFrontier's listing on the New York Stock Exchange and be renamed "HF Sinclair Corporation."

3.      On October 29, 2021, HollyFrontier filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that HollyFrontier stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) financial projections for HollyFrontier, Sinclair NewCo and the pro forma combined company; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Citigroup Global Markets Inc. ("Citi").  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, HollyFrontier's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.   Moreover, HollyFrontier's common stock trades on The New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of HollyFrontier common stock.

9.      Defendant HollyFrontier is a Delaware corporation with its principal executive offices located at 2828 N. Harwood, Suite 1300, Dallas, Texas 75201.   HollyFrontier is an independent petroleum refiner and marketer that produces high value light products such as gasoline, diesel fuel, jet fuel and other specialty products.  The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "HFC."

10.     Defendant Franklin Myers ("Myers") has been Chairman of the Board since February 2019, and a director of the Company since July 2011.

11.     Defendant Michael C. Jennings ("Jennings") has been Chief Executive Officer ("CEO") and President of the Company since January 1, 2020, and has been a director since 2011. Defendant Jennings previously served as Executive Vice President of the Company from November 2019 through December 2019, Executive Chairman of the Company from January 2016 until January 2017, CEO and President of the Company from July 2011 until January 2016, and Chairman of the Board from January 2013 to January 2016 and January 2017 to February 2019.

12.     Defendant Anne-Marie N. Ainsworth ("Ainsworth") has been a director of the Company since 2017.

13.     Defendant Anna C. Catalano ("Catalano") has been a director of the Company since 2017.

14.     Defendant Leldon E. Echols ("Echols") has been a director of the Company since 2009.

15.     Defendant Manuel J. Fernandez ("Fernandez") has been a director of the Company since 2020.

16.     Defendant R. Craig Knocke ("Knocke") has been a director of the Company since 2019.

17.     Defendant Robert J. Kostelnik ("Kostelnik") has been a director of the Company since July 2011.

18.     Defendant James H. Lee ("Lee") has been a director of the Company since July 2011.

19.     Defendant Michael E. Rose ("Rose") has been a director of the Company since July 2011.

20.     Defendants identified in paragraphs 10 to 19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21.     Sinclair Oil, a wholly owned subsidiary of Sinclair HoldCo, owns and operates the Sinclair and Casper refineries in Wyoming, and since early 2018 has been producing renewable diesel through its affiliate Wyoming Renewable Diesel Company LLC, the operations of which are co-located at the Sinclair refinery.  Sinclair Oil markets fuel in 30 states, supplying high-quality fuels to more than 300 wholesale distributors and more than 1,300 branded retail stations.  Sinclair Oil also licenses the use of the "Sinclair" brand at more than 300 locations throughout the country

in areas where it does not have direct supply capabilities.  The iconic Sinclair "Dino" brand is widely recognized with roots dating back nearly 100 years.  Sinclair Oil's refining, marketing and certain other businesses have been reorganized into Sinclair NewCo.

22.     New Parent is a wholly owned subsidiary of HollyFrontier.

23.     Parent Merger Sub is a wholly owned subsidiary of New Parent.

## SUBSTANTIVE ALLEGATIONS

### Company Background

24.     HollyFrontier is an independent petroleum refiner and marketer that produces high value light products such as gasoline, diesel fuel, jet fuel and other specialty products. HollyFrontier owns and operates refineries located in Kansas, Oklahoma, New Mexico, and Utah and markets its refined products principally in the Southwest U.S., the Rocky Mountains extending into the Pacific Northwest and in other neighboring Plains states.  In addition, HollyFrontier produces base oils and other specialized lubricants in the U.S., Canada and the Netherlands, and exports products to more than 80 countries.  HollyFrontier also owns a 57% limited partner interest and a non-economic general partner interest in Holly Energy Partners, L.P., a master limited partnership that provides petroleum product and crude oil transportation, terminalling, storage and throughput services to the petroleum industry, including HollyFrontier Corporation subsidiaries.

25.     On August 3, 2021, the Company announced its second quarter 2021 financial results and business highlights.  HollyFrontier reported net income attributable to HollyFrontier stockholders of $168.9 million, or $1.03 per diluted share, for the quarter ended June 30, 2021, compared to a net loss of $(176.7) million, or $(1.09) per diluted share, for the quarter ended June 30, 2020.  Refining segment income before interest and income taxes was $250.1 million for the second quarter of 2021, compared to a loss before interest and income taxes of $(5.1) million in the second quarter of 2020.  The segment reported Adjusted EBITDA of $211.2 million for the

second quarter of 2021 compared to $25.0 million for the second quarter of 2020.  Lubricants and

Specialty Products segment income before interest and income taxes was $60.1 million for the

second quarter of 2021 compared to a loss before interest and income taxes of $(209.3) million in

the second quarter of 2020.  The segment reported EBITDA of $79.2 million for the second quarter

of 2021 compared to loss of $(189.5) million in the second quarter of 2020.  Reflecting on the

Company's results and looking to the future, defendant Jennings stated:

> HollyFrontier delivered strong financial results in the second quarter, driven by
> improvement in refining margins in both the West and Mid-Continent regions and
> strengthening base oil margins in the quarter.  Our focus remains on executing our
> renewable diesel projects on-time and within capital guidance and closing the Puget
> Sound Refinery acquisition in the fourth quarter of this year.

**The Proposed Transaction**

26.     On August 3, 2021, HollyFrontier issued a press release announcing the Proposed

Transaction.  The press release stated, in relevant part:

> DALLAS -- HollyFrontier Corporation (NYSE: HFC) ("HollyFrontier") and Holly
> Energy Partners, L.P. (NYSE: HEP) ("HEP"), today announced they have entered
> into definitive agreements under which HollyFrontier and HEP will acquire Sinclair
> Oil Corporation and Sinclair Transportation Company from The Sinclair
> Companies ("Sinclair").
>
> HollyFrontier Transaction
>
> Under the terms of HollyFrontier's definitive agreement, HollyFrontier will acquire
> Sinclair's:
>
> - Branded marketing business and all commercial activities, which build on
>   an iconic brand with exceptional customer loyalty;
> - Renewable diesel business, which made Sinclair a first-mover in the space;
>   and
> - Two premier Rocky Mountain-based refineries.
>
> As part of the transaction, HollyFrontier will form a new parent company, named
> "HF Sinclair Corporation" ("HF Sinclair"), which will replace HollyFrontier as the
> public company trading on the NYSE.  At the closing, existing shares of
> HollyFrontier will automatically convert on a one-for-one basis into shares of
> common stock of HF Sinclair, and HF Sinclair will issue approximately 60.2

million shares of common stock to Sinclair, representing 26.75% of the pro forma equity of HF Sinclair with a transaction value of approximately $1.8 billion based on HollyFrontier's fully diluted shares of common stock outstanding and closing stock price on July 30, 2021. HollyFrontier expects to seek the approval of its stockholders under applicable rules of the New York Stock Exchange for the issuance of the HF Sinclair shares to Sinclair.

The transaction will transform HollyFrontier by accelerating its growth while increasing scale and diversification; it also allows HollyFrontier to integrate downstream into branded wholesale distribution. HF Sinclair will drive incremental free cash flow growth through its expanded refining business, integrated distribution network, leading renewable diesel position and growing lubricants and specialties business. The transaction is expected to be accretive to HF Sinclair's earnings, cash flow and free cash flow within the first full year, and to enable the combined company to increase its commitment to return cash to stockholders.

Upon closing of the transaction, HollyFrontier's existing senior management team will operate the combined company. Under the definitive agreements, Sinclair will be granted the right to nominate two directors to the HF Sinclair Board of Directors at the closing. The Sinclair stockholders have also agreed to certain customary lock up, voting and standstill restrictions, as well as customary registration rights, for the HF Sinclair shares to be issued to the stockholders of Sinclair. The new company will be headquartered in Dallas, Texas, with combined business offices in Salt Lake City, Utah.

HEP Transaction

Under the terms of the HEP transaction, HEP will acquire Sinclair's integrated crude and refined products pipelines and terminal assets, including approximately 1,200 miles of pipelines, eight product terminals and two crude terminals with approximately 4.5 MMbbl of operated storage. In addition, HEP will acquire Sinclair's interests in three pipeline joint ventures including: Powder Flats Pipeline (32.5% non-operated interest), Pioneer Pipeline (49.9% non-operated interest) and UNEV Pipeline (25% non-operated interest; HEP operates the pipeline and owns the remaining 75% interest). The purchase price for the HEP transaction will consist of an equity issuance of 21 million HEP common units and the payment of $325 million of cash, subject to customary closing adjustments, representing a transaction value of approximately $758 million based on the closing price of HEP units on July 30, 2021. Upon closing of the HEP transaction, HEP's existing senior management team will continue to operate HEP. Under the definitive agreements, Sinclair will be granted the right to nominate one director to the HEP Board of Directors at the closing. The Sinclair stockholders have also agreed to certain customary lock up restrictions and registration rights for the HEP common units to be issued to the stockholders of Sinclair. HEP will continue to operate under the name Holly Energy Partners, L.P.

The transactions have been unanimously approved by both HollyFrontier's and HEP's Board of Directors and are expected to close in mid-2022, subject to customary closing conditions and regulatory clearance, including the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act.  In addition, the HFC transaction and the HEP transaction are cross-conditioned on each other.

"HollyFrontier was formed through a transformational merger that facilitated a decade of significant stockholder returns along with growth and diversification into lubricants and renewables.  We believe these transactions with Sinclair represent a similar inflection point, marking the beginning of our next chapter as HF Sinclair," said Mike Jennings, Chief Executive Officer of HollyFrontier and HEP.  "With this accretive transaction, we are adding an integrated marketing business with an iconic brand while building on the strength of our expanded refining network, increasing our scale and accelerating the growth of our renewables business.  Together, with Sinclair and the dedicated employees who make it successful, we will be positioned to further build this business, capture synergies, and generate cash that will facilitate both capital return to stockholders and further investment in the business."

Mr. Jennings continued, "At the same time, this transaction will significantly extend the reach of HEP. Strengthened by an integrated network of Sinclair pipelines and storage facilities, HEP will have the scale and incremental earnings power to capture new organic growth opportunities and increase cash returns to unitholders."

Ross Matthews, Chairman and Chief Executive Officer of Sinclair commented, "As the oil and gas industry has evolved in recent years, we have carefully considered how best to position Sinclair's refinery and logistics assets and their related operations for the future.  We're confident these businesses—and the dedicated employees who operate them—will continue to thrive under this new ownership structure.   We expect these businesses will benefit significantly from HollyFrontier's and HEP's operational expertise, their network of refineries and midstream assets in the Western U.S., and the flexibilities that come with being part of a larger organization.  Sinclair's employees bring a wealth of talent and capability, including in the production of renewable diesel, which will be an important and growing line of business for HF Sinclair.  Sinclair also adds to HF Sinclair an outstanding and extremely successful brand marketing team.  The transaction will help accelerate the ongoing rapid expansion of our Sinclair branded retail sites and the iconic DINO brand."

"We also believe that HollyFrontier and HEP are an excellent cultural fit, with a shared commitment to integrity and respect for our employees, our communities and the environment," Mr. Matthews explained.   "We anticipate a seamless transition for our employees, distributors and other stakeholders following the closing of the transactions."

Strategic and Financial Benefits

HollyFrontier's acquisition of Sinclair's branded marketing business, refineries and its renewable diesel business is expected to:

- Diversify HollyFrontier's Business with the Addition of Sinclair's Iconic Brand and Integrated Distribution Network. By adding a branded wholesale business, the combined company will have the opportunity to grow an iconic brand across a range of HollyFrontier products and geographies. HollyFrontier will add a footprint of over 300 distributors and 1,500 branded locations across 30 states, with over 2 billion gallons of annual branded fuel sales.
- Increase the Size and Scale of HollyFrontier's Renewables Business. Sinclair's renewable diesel unit ("RDU"), co-located at its Sinclair, Wyoming refinery, processes soybean oil and tallow into renewable diesel that is sold into California. The RDU has recently been expanded to produce 10,000 barrels per day and Sinclair is currently in the process of constructing a pre-treatment unit, allowing for further feedstock advantage and flexibility. Once the transaction is complete, the combined renewables business is expected to produce approximately 380 million gallons of renewable diesel per year and will be a leading renewable diesel producer in the U.S. with the size and scale to support logistical, procurement, feedstock and operational synergies.
- Add Complementary Rocky Mountain Refineries to HollyFrontier's Network. The Sinclair and Casper Refineries are complementary to HollyFrontier's existing refinery network and will expand the combined company's footprint in the Rocky Mountain region. Like HollyFrontier's existing refineries, the Sinclair refineries are feedstock advantaged, given their Northern Tier access to Canadian and Rocky Mountain crudes.

  The combined refining network will feature seven complex refineries in the Rocky Mountains, Mid-Continent, Southwest and Pacific Northwest regions and will have a combined crude oil processing capacity of 678,000 barrels per stream day. Each refinery has the complexity to convert crude oils into a high percentage of gasoline, diesel and other high-value refined products.

- Deliver Financial Benefits Through Accretion and Cost Savings. The transaction is expected to be accretive to HF Sinclair's earnings, cash flow and free cash flow within the first full year. The transaction is expected to generate $100 million in run-rate synergies, as well as another $100-200 million in one-time savings during the first two years post close through working capital optimization.
- Enable the Combined Company to Generate Significant Free Cash Flow, Maintain Strong Balance Sheet and Facilitate the Return of Capital to

Stockholders. HollyFrontier's credit profile is expected to be enhanced through reduced leverage, increased scale and diversification of businesses. We expect the combined company to maintain a strong balance sheet and investment grade credit rating. Fueled by significant free cash flow generation, the combined company expects to return capital to stockholders through both dividends and share repurchases.

- Deepen HollyFrontier's and Sinclair's Commitment to ESG and Sustainability. HollyFrontier and Sinclair share a common philosophy on commitments to environmental stewardship, sustainability and strong corporate governance. The combined business will build on each company's ongoing ESG efforts with increased renewables scale, a shared commitment to health and safety practices that best serve employees and communities, and a focus on risk management.

HEP's acquisition of Sinclair's integrated crude and refined product pipeline and terminal assets, including interests in three midstream joint ventures, is expected to:

- Expand HEP's Scale and Earnings. HEP's acquisition of Sinclair's expansive network of crude and product assets provides an integrated system with connectivity to key crude hubs in the Rockies, including Casper, Guernsey and Cheyenne. The acquired assets are expected to produce stable revenues supported by long-term minimum volume commitments from HF Sinclair.
- Extend HEP's Access to Growing Geographies through Finished Product Pipelines and Storage through Additional Joint Ventures. The assets in the acquired joint ventures serve multiple regions and are strategically located to meet increasing demand for finished product pipelines and storage.

Financial Targets and New Plan to Return Capital

HF Sinclair will focus on maintaining its investment grade balance sheet and delivering significant free cash flow while utilizing a balanced approach to capital investment and cash return to stockholders. As part of its commitment to cash return, HF Sinclair intends to focus on the following strategy:

- Near-term: Reinstate the regular dividend of $0.35/share no later than the second quarter of 2022.
- Mid-term (next 18 months): Return $1 billion of cash to stockholders through regular dividends and share repurchases by the first quarter of 2023.
- Long-term (2023 and beyond): Implement a target payout ratio of 50% of adjusted net income in the form of regular dividends and share repurchases.

HEP's acquisition of Sinclair's logistics assets is expected to provide enhanced earnings power, allowing for further deleveraging and incremental cash return to

unitholders.  For its commitment to cash return, HEP intends to incorporate the following strategy:

- Near-term: Continue to reduce leverage while paying a quarterly distribution of $0.35/unit.
- Mid-term (next 18 months): Reduce leverage ratio to 3.5 times EBITDA while targeting a distribution coverage ratio of 1.5 times.  HEP also expects to increase its quarterly distribution with the option of repurchasing units with excess free cash flow.
- Long-term (2023 and beyond): Maintain leverage ratio below 3.0 times EBITDA while targeting a distribution coverage ratio of 1.3 times.  HEP expects to continue increasing the quarterly distribution with the option of repurchasing units with excess free cash flow.

Advisors

Citi is serving as financial advisor to HollyFrontier, and Morgan, Lewis & Bockius is serving as HollyFrontier's legal counsel. Bank of America Merrill Lynch is serving as financial advisor to the HEP Conflicts Committee, Bracewell is serving as HEP's legal counsel and Morris, Nichols, Arsht & Tunnell LLP is serving as the HEP Conflicts Committee's legal counsel. Wachtell, Lipton, Rosen & Katz is serving as legal counsel to both HollyFrontier and HEP.

**The Proxy Statement Contains Material Misstatements or Omissions**

27.    Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to HollyFrontier's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

28.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) financial projections for HollyFrontier, Sinclair NewCo and the pro forma combined company; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Citi.

*Material Omissions Concerning Financial Projections for HollyFrontier, Sinclair NewCo and the Pro Forma Combined Company*

29.     The Proxy Statement omits material information regarding the financial projections for HollyFrontier, Sinclair NewCo and the pro forma combined company, provided by HollyFrontier and Sinclair management and relied upon by CS Capital and Goldman for their analyses.

30.     For example, with respect to the financial projections for HollyFrontier, the Proxy Statement fails to disclose the line items underlying (a) Consolidated Adjusted EBITDA (b) Adjusted Net Income Attributable to HollyFrontier Stockholders and (c) Deconsolidated Cash Flow from Operations.

31.     Additionally, with respect to the financial projections for Sinclair NewCo, the Proxy Statement wholly omits Sinclair NewCo's net income projections and further fails to disclose the line items underlying (a) Consolidated Adjusted EBITDA and (b) Deconsolidated Cash Flow from Operations.

32.     Moreover, with respect to the financial projections for the pro forma combined company, the Proxy Statement fails to disclose the line items underlying (a) Consolidated Adjusted EBITDA (b) Adjusted Net Income Attributable to HollyFrontier Stockholders and (c) Deconsolidated Cash Flow from Operations.

33.     The omission of this information renders the statements in the "Certain Forecasted Financial Information" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Citi's Financial Analyses*

34.     The Proxy Statement describes Citi's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the descriptions of Citi's fairness opinion

13

and analyses fail to include key inputs and assumptions underlying these analyses. Without this information, as described below, HollyFrontier's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citi's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

35.     With respect to Citi's *Discounted Cash Flow Analysis* of the "Sinclair Downstream Business," the Proxy Statement fails to disclose: (i) quantification of the standalone unlevered, after-tax free cash flows for the Sinclair Downstream Business for the fiscal years ending December 31, 2022, through December 31, 2025; (ii) quantification of the inputs and assumptions underlying the discount rate range of 8.3% to 9.3%; and (iii) quantification of the terminal values.

36.     With respect to Citi's *Discounted Cash Flow Analysis* of HollyFrontier, the Proxy Statement fails to disclose: (i) quantification of the standalone unlevered, after-tax free cash flows for HollyFrontier for the fiscal years ending December 31, 2022, through December 31, 2025; (ii) quantification of the inputs and assumptions underlying the discount rate range of 8.2% to 9.2%; and (iii) quantification of the terminal values.

37.     With respect to Citi's *Selected Public Companies Analysis – Consolidated* for Sinclair Downstream Business, *Selected Public Companies Analysis – Sum-of-the-Parts* for Sinclair Downstream Business, *Selected Public Companies Analysis – Consolidated* for HollyFrontier and *Selected Public Companies Analysis – Sum-of-the-Parts* for HollyFrontier, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the companies observed in the analyses; and (ii) the enterprise values for each company.

38.     With respect to Citi's *Selected Precedent Transaction Analysis* for Sinclair, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the transactions observed in the analysis; and (ii) the transaction values for each transaction.

39.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

40.     The omission of this information renders the statements in the "Certain Forecasted Financial Information" and "Opinion of HollyFrontier's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

41.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of HollyFrontier will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

42.     Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

43.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

44.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented

and/or omitted material facts, including material information about HollyFrontier and Sinclair management's financial projections for HollyFrontier, Sinclair NewCo and the pro forma combined company and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Citi.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

46. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

46. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

47. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

48. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

49. The Individual Defendants acted as controlling persons of HollyFrontier within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of HollyFrontier and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

52.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the

Exchange Act.   As a direct and proximate result of defendants' conduct, HollyFrontier's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against defendants as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 16, 2021                    Respectfully submitted,

/s/ *Richard A. Acocelli*
Richard A. Acocelli
**WEISSLAW LLP**
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*